IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILAM J. WISNER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Civil Action No. 23-356-E |
| | ) |
| CAROLYN COLVIN,[1] | ) |
| *Acting Commissioner of Social Security*, | ) |
| | ) |
| Defendant. | ) |

O R D E R

AND NOW, this 19th day of December, 2024, upon consideration of the parties' cross-motions for summary judgment, the Court, after reviewing the Commissioner of Social Security's final decision denying Plaintiff's claim for disability insurance benefits under Subchapter II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, finds that the Commissioner's findings are supported by substantial evidence and, accordingly, affirms.[2]  *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153-54 (2019); *Jesurum v. Secretary of U.S. Dep't of Health & Human Servs*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988)).  *See also Berry v. Sullivan*, 738 F. Supp. 942, 944 (W.D. Pa. 1990) (if supported by substantial evidence, the Commissioner's decision must be affirmed, as a federal

---

[1]   Carolyn Colvin is substituted as the defendant in this matter pursuant to Federal Rule of Civil Procedure 25(d) and 42 U.S.C. § 405(g).  The Clerk is directed to amend the docket to reflect this change.

[2]   Defendant asks the Court to tax costs against Plaintiff but does not advance an argument in support of that request.  Accordingly, the Court will award no costs.  *See Pa. Dep't of Pub. Welfare v. U.S. Dep't of Health & Hum. Servs.*, 101 F.3d 939, 945 (3d Cir. 1996).

court may neither reweigh the evidence, nor reverse, merely because it would have decided the claim differently) (*citing Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)).[3]

---

[3]  Plaintiff argues that the Administrative Law Judge ("ALJ") erred in formulating his residual functional capacity ("RFC"), as he failed to explain how the evidence supported his specific findings. Plaintiff further argues that the ALJ improperly assessed the opinion of his treating nurse practitioner and that he mischaracterized his activities of daily living. The Court finds no merit in these contentions and instead finds that the ALJ's decision is supported by substantial evidence.

As noted, Plaintiff first contends that the ALJ failed to explain the basis for his RFC findings. A claimant's RFC, of course, is "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Fargnoli v. Massanari*, 247 F.3d 34, 40 (3d Cir. 2001). *See also* 20 C.F.R. § 404.1545(a). Plaintiff is correct that, in formulating a claimant's RFC, not only must an ALJ consider all relevant evidence, the RFC finding "must 'be accompanied by a clear and satisfactory explication of the basis on which it rests.'" *Fargnoli*, 247 F.3d at 41 (quoting *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981)). "'[A]n examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision.'" *Id.* (quoting *Cotter*, 642 F.2d at 705). *See also* S.S.R. 96-8p, 1996 WL 374184 (S.S.A.), at *7 ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."). Plaintiff suggests that the ALJ's "conclusory statement" that his RFC findings were supported by substantial evidence was insufficient to satisfy this standard. (Doc. No. 10, p. 18). The Court disagrees.

In raising his argument, Plaintiff cites to a decision by the Honorable Alan Bloch, the judge who had been assigned to this case, *Caville v. Berryhill*, No. CV 18-1657, 2019 WL 4278832, at *1 (W.D. Pa. Sept. 10, 2019). He contends that here, as in that case, the ALJ formulated a highly specific RFC without explaining specifically how the evidence supported such findings. He concludes, therefore, that, like *Caville*, this case should be remanded for further consideration. However, this argument overlooks one very important distinction between the two cases. In *Caville*, the ALJ had largely rejected the only medical opinion and proceeded to construct an extensive RFC without discussing how the evidence translated into those very specific findings. Rather, she simply reviewed the evidence generally and essentially asked the Court to assume that this evidence led to the very specific conclusions she drew, despite a medical opinion to the contrary. The Court was left to speculate as to why, for instance, the proper exertional level was light work or how the nonexertional limitations had been determined. The situation here is very different.

In this case, there were several medical opinions as to Plaintiff functional capacity, and the ALJ relied on the limitations contained in several of these opinions in crafting the RFC. While the ALJ was not expressly required to do so, *see Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ – not treating or examining physicians or State agency

consultants – must make the ultimate disability and RFC determinations."); *Titterington v. Barnhart*, 174 Fed. Appx. 6, 11 (3d Cir. 2006) ("There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC."); 20 C.F.R. §§ 404.1527(d)(2), 404.1546(c), the ALJ's reliance on such opinion evidence here allows the Court to determine why the specific limitations in the RFC were included. Indeed, throughout his decision, the ALJ tied the evidence into the RFC findings. His overall discussion of the objective medical evidence, Plaintiff's treatment history and medication regimen, Plaintiff's activities of daily living, and the various medical opinions more than adequately demonstrated how he determined Plaintiff's RFC.

Of course, Plaintiff also takes issue with the ALJ's consideration of the medical opinion evidence, particularly his finding that the opinion of treating Nurse Practitioner Sheryl Kridler, NP, was not persuasive. (R. 25). In so arguing, he asserts that the ALJ failed to acknowledge "her longstanding treatment relationship with Plaintiff" in rejecting her opined limitations, which were significantly more restrictive than what was included in the RFC. (Doc. No. 10, p. 20). However, the ALJ considered NP Kridler's opinion pursuant to 20 C.F.R. § 404.1520c, which states that supportability and consistency, rather than a source's treating relationship with the claimant, are now "the two most important factors for determining the persuasiveness of medical opinions." 82 Fed. Reg. 5844-01, at 5853 (Jan. 18, 2017). *See also* §§ 404.1520c(b) and (c). The ALJ here properly focused on these factors in evaluating the opinion. (R. 25). Although the existence of a treating relationship is certainly a valid factor, it is ***not*** one that an ALJ is required to expressly discuss in his or her decision. *See* §§ 404.1520c(b)(2), (c)(3)(v). Regardless, Plaintiff's contentions notwithstanding, the ALJ did, in fact, consider the fact that NP Kridler treated Plaintiff in determining the persuasiveness of her opinion. (R. 25).

Plaintiff also argues that the ALJ inaccurately characterized his mental status examinations as essentially normal in finding that these examination results were inconsistent with and failed to support NP Kridler's opined limitations. In so doing, he highlights certain treatment notes demonstrating reported symptoms such as anxiety, irritability, anger issues, depression, nightmares, and flashbacks. However, the ALJ acknowledged some irregular findings in Plaintiff's mental status examinations, such as stress, irritability, flashbacks, and nightmares (R. 24), but explained why they did not undermine his overall characterization of the examinations as normal or near normal. He discussed, for instance, that these reported symptoms were largely situational, tied to issues such as family legal trouble and problems with Plaintiff's farm animals. He also noted that NP Kridler's opinion was not consistent with the findings of the mental consultative examiner. The Court finds the ALJ's explanation to be adequate and supported by substantial evidence.

Plaintiff contends conversely that the ALJ erred in finding the opinions of the state agency reviewers to be persuasive because they "never met or examined Plaintiff." (Doc. No. 10, p. 21). However, as discussed, there was nothing inappropriate in finding the opinions of non-treating sources to be more persuasive than that of a treating source as long as the ALJ properly found them to be more consistent with and more supported by the relevant record evidence. Indeed, this was true even under the regulations governing cases filed prior to March 27, 2017, as an ALJ was required to consider the treating relationship between a claimant and an

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 9) is DENIED and that Defendant's Motion for Summary Judgment (Doc. No. 12) is GRANTED as set forth herein.[4]

                                                                                                                     s/Mark R. Hornak
                                                                                                                    United States District Judge

ecf:        Counsel of record

---

opining doctor, but when the medical opinion of a treating source conflicted with that of a non-treating, or even a non-examining physician, "the ALJ may choose whom to credit." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). *See also Dula v. Barnhart*, 129 Fed. Appx. 715, 718-19 (3d Cir. 2005); *Salerno v. Comm'r of Soc. Sec.*, 152 Fed. Appx. 208 (3d Cir. 2005).

      Plaintiff next argues that the ALJ improperly considered his ability to engage in activities of daily living in finding him not to be disabled, claiming that the ALJ relied on his ability to engage in transient and sporadic activity as evidence of an ability to engage in work-related activity. (Doc. No. 10, p. 22). Similar claims arise in a number of social security disability cases and raise a similar dilemma. There is, of course, nothing inappropriate with an ALJ considering a claimant's activities of daily living in evaluating the severity of the claimant's symptoms and limitations. In fact, ALJs are required to do so. *See* 20 C.F.R. § 404.1529(c)(3)(i); *Wright v. Astrue*, No. Civ. 10-942, 2011 WL 4079067, at *3 (W.D. Pa. Sept. 13, 2011). However, as Plaintiff points out, in performing this analysis, an ALJ cannot use evidence of sporadic and transitory activities to demonstrate an ability to engage continuously in substantial gainful activity. *See Fargnoli*, 247 F.3d at 40 n.5. The question here, as in many cases, is whether the ALJ's proper consideration of Plaintiff's daily activities veered into an improper reliance on sporadic and transient activities. Here, it did not.

      The ALJ's consideration of Plaintiff's activities of daily living in this matter was comprehensive and fairly addressed the nature of those activities. He discussed Plaintiff's ability to operate a farm, garden, perform construction work, and maintain his vehicles. (R. 24-25). While Plaintiff may characterize some of these activities as sporadic or transitory, his characterization does not necessarily make them such. Indeed, several of these activities, such as chopping wood, neutering animals, and building barns and pens for his animals, were anything but sporadic and transitory. Substantial evidence supports a finding that Plaintiff engaged in such activities on a regular basis. The Court further notes that the ALJ did not rely solely on Plaintiff's activities of daily living in engaging in his analysis, but rather properly treated these as one of several factors for consideration.

      Accordingly, the Court finds that the ALJ applied the correct legal standards and that substantial evidence supports that decision. It will therefore affirm.

[4]    Defendant refiled this same motion at Docket No. 15 on July 15, 2024. It is not clear whether this was done inadvertently, but, in any event, Doc. No. 15 is denied as moot.